*In re* MARRIAGE OF EDYCE L. TAYLOR, a/k/a Edyce L. Luntz, Petitioner-Appellee, and MARVIN N. LUNTZ, Respondent-Appellant.

First District (4th Division)     Nos. 80-366, 80-521, 80-1025 cons.

Opinion filed September 25, 1980.

Richard C. Moenning, of Chicago, for appellant.

Charles S. Simon, of Goldstein, Simon, Briskman & Briskman, of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The respondent, Marvin N. Luntz, appeals from orders of the circuit court of Cook County requiring him to contribute toward the education and maintenance expenses of his adult daughter, Gail, requiring him to pay an increase in his contribution toward the education and maintenance expenses of his adult daughter, Donna, and requiring him to pay a portion of the attorney's fees of the petitioner, Edyce Taylor (formerly Edyce Luntz). On appeal he contends (1) the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) (Marriage Act) precludes the award of support for adult children absent physical or mental disability; (2) the trial court failed to consider the statutory factors in ordering him to contribute toward the education and maintenance

expenses of his adult daughters; (3) the petitioner failed to show a change in circumstances to warrant the order requiring him to increase his contributions toward the education and maintenance expenses of his daughter Donna; (4) the trial court erred in refusing his request for a continuance; and (5) the court erred in awarding attorney fees.

The parties were married on June 13, 1954. They had three children, Julia, born June 12, 1958, Gail, born February 18, 1961, and Donna, born August 8, 1959. On July 2, 1973, the parties were divorced. The child support portion of the divorce decree contain the following provision for the education of the parties' three children:

"If one or more of the minor children of the parties is educable and if it is within the ability of the defendant [Luntz] to pay in whole or in part for this education, defendant shall remain liable for the education of such child or children after that child or children reaches majority. The question of whether or not the child is educable and whether it is within the ability of the defendant to pay for this education shall be subject to further order of the court."

On August 15, 1977, on the petition of Taylor, the trial court ordered Luntz to pay $100 toward the education and maintenance expenses of Donna Luntz for each month that she was attending college beginning September 1, 1977. This order was not appealed.

On December 16, 1978, Taylor filed a petition seeking contributions from Luntz toward the education and maintenance expenses of Gail Luntz from February 18, 1979, her 18th birthday, until June of 1979, her date of graduation from high school and also seeking contribution for Gail's anticipated college expenses.

Taylor's petition was set to be heard on February 8, 1979. Luntz failed to appear in court on that date, although he had been notified. The court entered an attachment order against Luntz. Luntz obtained counsel, the attachment order was never executed and the matter was set for hearing for July 27, 1979. Luntz filed his response on July 17, 1979. On July 27, 1979, the court continued the cause to August 17, 1979, at the request of Luntz' counsel. On August 7, 1979, Taylor filed a petition seeking an increase in the amount that Luntz was paying toward the college expenses of Donna. A by agreement continuance was entered, to September 17, 1979. On September 17, 1979, the cause was continued to October 3, 1979, for a status report. On September 28, 1979, Taylor moved that there be immediate trial on October 3, 1979. On October 3, 1979, the trial court specially set the matter for trial on November 16, 1979, at 2 p.m. Throughout the proceedings extensive formal discovery was conducted.

On November 14, 1979, Luntz' counsel delivered a letter to Taylor's counsel requesting a continuance because of a conflict he had with

another trial on November 16, 1979. A copy of the letter was sent to the trial judge. Luntz' counsel was notified that the letter had been received by Taylor's counsel but no response was made to the request for a continuance. On November 16, 1979, Luntz' counsel's office telephoned the trial judge, who stated that no decision would be made on the continuance pending a determination of what Taylor's counsel wanted to do.

On November 16, 1979, at 2 p.m., Taylor and her counsel appeared in court before Judge Lassers and answered ready for trial. Neither Luntz nor his counsel appeared. The trial court requested that Taylor's counsel telephone the office of Luntz' counsel. Taylor's counsel did so at 2:15 p.m. Luntz' counsel was told to be in court with his client "immediately." Luntz' counsel appeared immediately thereafter but Luntz was not present.

Luntz' counsel explained to the trial court that he had been on trial in Federal court, that the Federal court matter had been continued so that the attorneys could prepare for jury selection, and that he was at that time preparing for jury selection. Luntz' counsel then made an oral motion for a continuance on the ground that he was actually engaged in another trial. The motion was denied. Luntz' counsel stated he would leave the courtroom if the trial commenced. Trial commenced, and Luntz' counsel left the courtroom.

According to the evidence, Gail's college expenses at the University of Illinois in Champaign-Urbana would be $3,824 including tuition, fees, books, room and board. Donna's expenses at the University of Indiana would be $4,730 including tuition, books, supplies, food and rent. Gail earned $1,075 gross in 1977 and $2,591 gross under a high school work study program in 1978. Donna's gross earnings were $1,475 in 1977 and $1,276 in 1978. Taylor had not worked since March 3, 1979. She had been earning $156 net per week of $8,112 per net per year. Luntz' take home pay is $24,526 per year.

The trial court entered an order requiring Luntz to pay $130 toward the education and maintenance of Gail from the date of her 18th birthday to the date of her graduation from high school and $6,415 per year towards the college and maintenance expenses of Gail and Donna. The court also ordered Luntz to pay $1,500 of Taylor's $2,737 attorneys' fees.

In ordering Luntz to pay $6,415 toward the college expenses of Gail and Donna the trial court noted that each party was therefore responsible for the expenses in proportion to his or her income. The court also noted that $6,415 was 26% of Luntz' income or 1% less than the circuit court guideline for child support payments for minor children.

On January 23, 1980, Taylor moved under section 508(a)(3) of the Marriage Act for attorneys' fees for the defense of the appeal of the post-

judgment orders. On February 28, 1980, after a full hearing, Luntz was ordered to contribute $1,000 toward these fees.

Luntz' first argument on appeal is that the Marriage Act prohibits emancipated child support unless the emancipated child has a mental or physical disability. Section 513 of the Marriage Act provides in part:

"The court may award sums of money out of the property and income of either or both parties for the support of the child or children of the parties who have attained a majority and are not otherwise emancipated only when such child is mentally or physically disabled; and the application therefor may be made before or after such child has attained majority age. The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property of either or both of its parents as equity may require, whether application is made therefor, before or after such child has, or children have, attained majority age." Ill. Rev. Stat. 1979, ch. 40, par. 513.

■■ We do not believe that the legislature intended to allow education and maintenance expenses only for emancipated children with physical or mental disabilities. The first sentence of section 513 provides for the support of mentally or physically disabled children. The second sentence, by use of the word "also," describes *another* situation in which an emancipated child can be provided for. That situation involves "the education and maintenance" of children who have reached their majority. There is no requirement that the emancipated child be mentally or physically disabled where the support ordered is for education and maintenance expenses.

Luntz next argues that the trial court's award must be reversed because the court failed to consider the requisite statutory factors. Section 513 of the Marriage Act requires the court in making awards for the educational expenses and maintenance of emancipated children to consider "all relevant factors" which appear reasonable and necessary, including:

"(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." (Ill. Rev. Stat. 1979, ch. 40, par. 513(a).)

Luntz contends the trial court was presented with evidence of the incomes of Luntz, Taylor and the children, but was not presented with other evidence concerning the financial resources of Luntz, Taylor and the children.

■■ The record of proceedings shows that the trial court conducted a full

hearing. Taylor had the burden of proving that Luntz should contribute toward the college expenses of the two children and of proving how much his share should be. The financial resources of the parties and the children must, under section 513, be considered by the trial court in deciding this issue. Taylor established a prima facie case by introducing evidence that the children's incomes were nominal, that Luntz earned $24,526 net annually and that she had no income but had previously earned $8,112 net annually. Luntz therefore had the burden of going forward with evidence that would at least equally balance Taylor's evidence. He did not undertake to meet this burden. Notwithstanding that Luntz may have had evidence which if presented to the trial court might have countered Taylor's evidence, the trial court did base its determination upon its consideration of the financial resources of the parents and children. We therefore reject Luntz' argument that the trial court's order was not based upon a consideration of the financial resources of the parents and children.

■ Luntz next contends that the order increasing his contribution toward the education and maintenance expenses of Donna must be reversed because there was no showing of change in circumstances. This contention is unsupported by the record. According to the transcript of the November 16, 1979, proceeding there was evidence presented that Taylor's income had decreased, and that Donna's tuition and living expenses had risen from $3,017 to $4,730.

Luntz next argues that the trial court abused its discretion in refusing to continue the November 16, 1979, hearing on his oral motion. He argues this refusal was contrary to circuit court of Cook County Rule 5.2(a) which provides in part:

> "A party shall be entitled to a continuance on the ground that his attorney (who filed his trial appearance at the pretrial conference) is actually engaged in another trial or hearing, but only for the duration of the particular trial or hearing in which the attorney then is engaged."

■ According to his own account Luntz' counsel was in Federal court on November 15, 1979. On that date the Federal court judge continued the matter to November 19, 1979, for jury selection. On the morning of November 16, 1979, Luntz' counsel met with opposing counsel at the Federal court at the request of opposing counsel. On the afternoon of November 16, 1979, Luntz' counsel was at his office preparing for the jury selection that was to take place on November 1, 1979. We conclude that on November 16, at 2 p.m., when the instant matter was set for trial, Luntz' counsel was not "actually engaged" in another trial and thus not entitled to a Rule 5.2(a) continuance. As stated by the trial judge, if trial lawyers were considered to be actually engaged in trial "during intervals

from continuance to continuance" then most trial attorneys would be continuously engaged in trial.

Luntz' next argument is that his counsel believed in good faith that he was entitled to a continuance and this belief was the reason neither he nor his counsel were present for trial. He contends that therefore the trial court erred in denying his post-judgment motion to vacate.

In *Tamimie v. City of Galesburg* (1977), 50 Ill. App. 3d 843, 365 N.E.2d 1177, the appellate court affirmed the trial court's denial of Tamimie's post-trial motion to vacate where the cause had been dismissed after Tamimie failed to appear for trial. The appellate court wrote:

> "We are cognizant of the fact that courts of review generally tend to favor the disposition of disputes on their merits; however, to unwaveringly follow this trend would strip the trial courts of their power to regulate and dispose of pending litigation which is ever increasing in our State and in some instances clogging the trial court docket.
>
> * * *
>
> An appellate court is empowered to review the exercise of discretion of the trial court in granting or denying a motion to set aside a judgment, but such court cannot supplant the exercise of such discretion with its own and will not interfere unless there has been a palpable abuse of such discretion." *Tamimie*, 50 Ill. App. 3d 843, 845-46, 365 N.E.2d 1177, 1179.

The *Tamimie* rationale is applicable here. We do not believe the trial court's denial of Luntz' motion to vacate was a palpable abuse of discretion. Luntz' counsel did not move for a continuance of this matter until after he had been called to the courtroom nearly one hour after the time that the cause had been set to be heard. Two days prior to the trial date he sent a letter to Taylor's counsel requesting an agreed continuance. However, Luntz' counsel received no indication that Taylor's counsel would agree to a continuance. Even if Taylor's counsel had agreed, such agreement would not have excused the failure of Luntz or his counsel to be represented at the scheduled hearing. Luntz had a duty not only to Taylor's counsel but also to the trial judge. There was a backlog of 16,795 cases as of December 1979 in the domestic relations division of the county department of the circuit court of Cook County. Trial time was, as the trial judge stated, at a premium. Counsel may not, by merely sending a letter to opposing counsel, unilaterally determine not to attend a scheduled trial.

Luntz' last argument on appeal is that the court's award of attorneys' fees was "not justified and [was] improper, within the meaning of Section 508." However, Luntz does not discuss how or in what way the awards were improper. There was a proper motion filed before the trial court and

a full hearing was had on the issue. We find no basis on which to reverse the award.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LINN, P. J., and ROMITI, J., concur.