MARY ANNE FAUST, Petitioner-Appellee, *v.* ROBERT GENE FAUST, Respondent-Appellant.

First District (4th Division)    No. 80-1786

Opinion filed September 10, 1981.—Rehearing denied October 15, 1981.

John August Cook, P. C., of Chicago (John A. Cook and Mary Walsh Crossett, of counsel), for appellant.

Leoris & Cohen, of Chicago (Sigi M. Offenback and Rocco A. Romano, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Robert G. Faust, respondent, appeals from an order entered in the Domestic Relations Division of the circuit court of Cook County directing him to contribute $1500 towards the technical school education expenses of his adult son, Mark Faust.

Respondent contends: (1) the award was improperly granted, having been ordered contrary to the requirements of section 513 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1979,

ch. 40, par. 513); (2) the award was improperly granted, having been ordered contrary to the manifest weight of the evidence.

We disagree with respondent's contentions, and we affirm the trial court.

Factual Background:

After 12 years of marriage, the parties were divorced in 1971. Mary Faust, petitioner, was awarded the custody of the parties' four minor children. Respondent was obligated to pay the undivided sum of $400 per month towards the children's support.

Pursuant to court order entered in 1973, respondent was obligated to continue to pay the undivided support allowance of $400 per month for three of the children, one having reached majority. As of February 1979, respondent, without leave of court and without the expressed consent of petitioner, reduced the undivided support allowance to $268 per month for the two remaining minor children, the child Mark Faust having come of majority age.

On August 16, 1979, petitioner, by petition directed to respondent, sought claimed arrearages of support, an increase in the support for the two remaining minors and an order obligating respondent to pay a share of Mark Faust's education expenses in the automotive technician training course at Wyoming Technical Institute in Laramie, Wyoming.

At a hearing on November 6, 1979, the evidence relating to the requested education allowance disclosed that Mark Faust became 18 years old on January 23, 1979. He had graduated from high school earlier that month. On January 24 he began work as a full-time mechanic trainee at a shop where he had previously worked part-time over the last 3½ years. He had a gross income of between $203 to $217 per week, owned a motorcycle for which he paid $926 in 1978 and a 1971 Oldsmobile for which he paid $700 in 1979. While working as a mechanic trainee, he saved $1731.

The evidence further disclosed that Mark Faust applied to the Wyoming Technical Institute to attend a six-month automotive technician training course beginning December 1979. He estimated that the course cost would total $3200 plus approximately $300 per month for room and board making a grand total expense of about $5000. Travel, clothing, and incidental expenses were not included in the total cost figure.

Respondent testified that he is employed as an industrial engineer and earns $1925 gross and $1240.75 net, per month. He remarried in 1973 and has one child with his present spouse. It was respondent's contention that his monthly expenses, including his home mortgage payment of $268 per month, exceeded his net income. He acknowledged receiving $12,000 from the sale proceeds of the home he had owned with petitioner and that he owned securities worth about $500. He also indicated, without speci-

fying the dollar amount, that he had an interest in a profit sharing and pension plan.

Petitioner, who remarried in 1975, has income of about $40 per week from her part-time work as a clerk. No testimony was elicited from her of any other sources of income or property holdings from which she could contribute to the education expenses of Mark Faust.

At the conclusion of the November 6 hearing, the trial court ordered respondent to pay $150 per month per child for the support of the two remaining minor children, a total of $300 per month, rather than the $268 per month that was being paid by respondent. The order also directed respondent to pay $1500 towards the technical school education expenses on behalf of Mark Faust. The claim by petitioner for arrearages growing out of the respondent's unilateral reduction of the undivided support payments was not ruled upon and the claim appears to have been abandoned by petitioner. (See *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12; *Claflin v. Claflin* (1980), 82 Ill. App. 3d 246, 402 N.E.2d 673, *cert. denied* (1980), ___ U.S. ___, ___. The respondent's motion to vacate the order of November 6, 1979, was denied, and this appeal followed. Respondent's appeal relates only to the portion of the November 6 order granting the $1500 educational allowance. (On oral argument it was disclosed that Mark Faust attended and successfully completed the six month course at the Wyoming Technical Institute.)

OPINION

I

It is respondent's position, with which petitioner agrees, that the provision for an award of educational expenses on behalf of an adult child is controlled by section 513 of IMDMA (Ill. Rev. Stat. 1979, ch. 40, par. 513). Section 513 provides as follows:

"The court may award sums of money *out of the property and income* of either or both parties for the support of the child or children of the parties who have attained majority and are not otherwise emancipated only when such child is mentally or physically disabled; and the application therefor may be made before or after such child has attained majority age. The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, *out of the property* of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." (Emphasis added.)

It is respondent's further position that an educational award is restricted to being paid *"out of property"* belonging to either or both of the child's parents as equity may require, and the award cannot be directed to be paid *"out of property and income"* as in the case of support allowances for an adult mentally or physically disabled child. Respondent argues that the provisions of section 513 must be narrowly and strictly construed, and since the educational expense award on behalf of Mark Faust was not made "out of [respondent's] property" but was made "out of [respondent's] property *and income"* (emphasis added), that the award was improper having been made contrary to the statutory standard.

■■ We disagree with respondent and believe his novel interpretation of the statutory provision is too circumscribed and attenuated. To follow the rationale proposed by respondent is to disregard the additional provisions of section 513 that compels the court to "consider all relevant factors which shall appear reasonable and necessary, including: (a) the *financial resources* of both parents ° ° °." Additionally, to accept respondent's contention is literally to frustrate the intention of IMDMA to foster and provide for the proper educational needs of even adult children. (Ill. Rev. Stat. 1979, ch. 40, par. 102(4).) We believe the words "out of property" as used in section 513 are sufficiently broad and encompassing so as to include income from wages, profit from investments, property holdings and the ownership of other assets and resources of value. (See *In re Marriage of Taylor* (1980), 89 Ill. App. 3d 278, 411 N.E.2d 950.) We find no merit to respondent's position.

## II

■■ Respondent also urges that even if section 513 of IMDMA authorizes payment of educational expenses on behalf of an adult child, that the award of $1500 towards those expenses was against the manifest weight of the evidence.

Under our statute and relevant case law, no absolute duty exists for a parent to pay the educational expenses of an adult child. Such a duty is created only by a trial court's order, after hearing on a proper petition, either to enforce an agreement to make such payment or creating the duty to make such payment in accordance with the standards of section 513 of IMDMA. See *Greiman v. Friedman* (1980), 90 Ill. App. 3d 941, 414 N.E.2d 77.

■■ The trial court here had the discretionary power, based upon the law and the evidence presented, to decide the issue of the respondent's responsibility to contribute to the technical school expenses of Mark

Faust. Our analysis of the evidence indicates quite clearly that the trial court exercised its discretion properly and that its determination is not at all contrary to the manifest weight of the evidence—rather, its ruling is thoroughly supported.

It is apparent that Mark Faust is a young man seriously and responsibly involved in attaining the education necessary to be an expert mechanic. His background of part-time work while attending high school, his saving of a portion of his earnings to pay for the major part of his technical school expenses, and his obvious dedication to become totally independent through his mastery of a technical skill buttresses his worthiness for the modest financial support he requires.

It is also clearly shown in the record that the able and concerned trial court closely evaluated the totality of respondent's and petitioner's financial situations and the present family circumstances of each of the parties. (*E.g., Gregory v. Gregory* (1964), 52 Ill. App. 2d 262, 202 N.E.2d 139; *Berkheimer v. Berkheimer* (1978), 63 Ill. App. 3d 19, 380 N.E.2d 474 (expenses relating to a second family are relevant, but of "secondary" consideration); *Singer v. Singer* (1979), 70 Ill. App. 3d 472, 388 N.E.2d 1051.) The trial court related the evidence presented (to which we have alluded already), to the applicable provisions and requirements of section 513 of IMDMA. We cannot, as respondent would have us do, find that the respondent was financially incapable of contributing $1500 towards the educational expenses and find that the trial court's ruling was contrary to the manifest weight of the evidence. See also *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382; *In re Marriage of Gardner* (1980), 85 Ill. App. 3d 1004, 407 N.E.2d 802; *In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 408 N.E.2d 418.

Accordingly, for the reasons set forth, we affirm the decision of the trial court.

Affirmed.

ROMITI, P. J., and JIGANTI, J., concur.